**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtor*
120 Bloomingdale Road
White Plains, New York 10605
(914) 381-7400
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                                  Chapter 11
                                                                            Case No. 23-22587(SHL)
WILLIAMSBURG BOUTIQUE LLC,

                                        Debtor.
------------------------------------------------------------X

## <u>DISCLOSURE STATEMENT</u>

Williamsburg Boutique LLC (the "Debtor") submits this Disclosure Statement pursuant to Section 1125(b) of Title 11, United States Code, 11 U.S.C. §§ et seq. (the "Bankruptcy Code") and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in connection with the Debtor's Plan of Reorganization dated October 30, 2023 (the "Plan") to all known holders of Claims against or Interests in the Debtor in order to adequately disclose information deemed to be material, important and necessary for the Debtor's creditors to make a reasonably informed judgment about the Plan. A copy of the Plan is attached hereto as Exhibit "A."

[The Bankruptcy Court has approved this Disclosure Statement in this Chapter 11 Case under Section 1125(b) of the Bankruptcy Code and has scheduled a hearing on confirmation of the

Plan for January __, 2024 at 10:00 a.m. (the "Hearing")]. Under Section 1126(b) of the Bankruptcy Code, only Classes[1] of Allowed Claims that are "impaired" under the Plan, as defined by Section 1124 of the Bankruptcy Code, are entitled to vote on the Plan. Generally, a Class is impaired if its legal, contractual or equitable rights are altered or reduced under the Plan. Under the Plan, only Class 1 and Class 5 are unimpaired under the Plan and are deemed to have accepted the Plan. Classes 2,3 and 4 are Impaired and are entitled to vote to accept or reject the Plan.

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORTS HAVE BEEN MADE TO BE ACCURATE. HOWEVER, NOTHING CONTAINED HEREIN SHALL OR SHALL BE DEEMED TO BE AN ADMISSION OR A DECLARATION AGAINST INTEREST BY THE DEBTOR AND FOR PURPOSES OF ANY FUTURE LITIGATION. TO THE EXTENT THAT CERTAIN DOCUMENTS ARE SUMMARIZED WITHIN THIS DISCLOSURE STATEMENT OR THE PLAN, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS.**

# I. INTRODUCTION

## A. Background

In 2014, the Debtor was formed to acquire title to the development real property located at 80 Ainslie Street, Brooklyn, New York (the "Property").

The Debtor acquired the Property for $6,000,000. The acquisition was funded in part by two of the Debtor's members, Juda Klein and Simon Tyrnauer, who each own a 45% membership interest in the Debtor[1] and in part from financing obtained from Bankwell Bank, LLC ("Bankwell"), who also advanced funds for the construction and development of the Property, and holds a perfected first priority mortgage thereon.

The Property consists of a flag lot that is 59 feet wide and 100 feet deep on Ainslie Street, with an 70-80% complete, five story building located thereon, The Property is zoned for mixed residential/commercial use. The Property is fully insured, secured, and maintained.

The Property, at the time of acquisition in 2014, consisted of a 2 story dwelling. Over the next few years, the Debtor commenced construction, with project and construction financing from Bankwell, on a 5 story building intended for 16 residential units (including 5 affordable section 421-A units) and commercial space on the ground floor.

Unfortunately, the Debtor ran out of working capital before the building and construction project was completed. The building is currently 70-80% complete and still requires approximately $3.5 million to complete. Although the Debtor obtained a construction loan facility sufficient to complete the project other than any unexpected cost overruns, Bankwell improperly ceased funding in August 2019, leaving the Debtor with no ability to complete the construction. The Debtor believes

---

[1] Mendel Klein is the other 10% member of the Debtor.

3

it holds counterclaims against Bankwell for its improper cessation of funding and other acts.

As a result, and compounded by the shut down in construction during 2020 and 2021 due to COVID-19, the loans made by Bankwell were declared in default in early 2020. Bankwell claims to be currently owed approximately $14 million. The Debtor disputes this calculation as it is believed to contain default interest despite certain several deficiencies by Bankwell resulting in the improper charging of default interest.

Also, in 2017, the Debtor obtained a loan from Congregation Bnai Jacob ("CBJ") for approximately $2 million. The CBJ claim is unsecured.

In addition, there are approximately 18 junior mechanics' liens filed against the Property totaling approximately $1,925,000 as well as other accounts payable totaling an additional approximate $550,000.

The Debtor believes the Property has a current fair market value of approximately $15,700,000 and would be worth substantially more upon completion and sale of individual units.

As a result of Bankwell's calling of the loan and their unwillingness to further fund the project, the Debtor has been attempting to either refinance or find alternative forms of capital to complete and sell out the project, causing the Debtor to expend monies and resources that could have otherwise been used to complete the project.

However, the Debtor was unnecessarily sidetracked and diverted by virtue of Bankwell commencing a direct action against the Debtor's 3 members in lieu of traditional foreclosure on the Property in a veiled attempt to put unnecessary pressure on the members to "take out" Bankwell (the "Guaranty Action").

Just prior to the Chapter 11 filing, Juda and Mendel Klein moved in the state court to impled the Debtor due to our rights of indemnification and/or contribution under state law. The motion was

4

pending at the time of the Chapter 11 filing and is still pending as of this date.

The Debtor intends in short order to bring claims against Bankwell before the Bankruptcy Court arising out of (a) its failure to fully fund the construction loan, directly resulting in the stalling of the project and accumulation of additional debt and (b) the improper charging of default.

At the same time, the Debtor intends to promptly hire a broker to seek new financing or capital to complete the project so that all allowed creditors (and possibly equity) can maximize their return. If a plan can be consummated expeditiously in bankruptcy, the creditors will likely have the best chance of a recovery through a Chapter 11 plan of reorganization.

### Efforts to Refinance or Sell the Property

During the Chapter 11 Case, the Debtor has been seeking out various sources of capital as well as talking to potential brokers and purchasers to either refinance or sell the Property. Subject to the time deadlines set forth in the Plan, the Debtor shall market the Property immediately, and the Debtor has agreed to retain a licensed real estate broker, subject to Court approval, to refinance or sell and liquidate the Property for the highest and best price on or before February 29, 2024. Upon closing, the proceeds of refinance or sale shall be distributed to holders of Claims and Interests in the same manner as provided for in the Plan.

## II.     THE PLAN OF REORGANIZATION

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT AND CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN AND TO MAKE AN INTELLIGENT JUDGMENT CONCERNING IT THE PLAN GOVERNS OVER ANY DISCREPANCY IN THIS SUMMARY.

The Plan will be funded with the net proceeds from (a) the sale or refinance of the Property. The sale or refinance of the Property, as applicable, following Confirmation of the Plan, shall not

be subject to any stamp or similar transfer or mortgage recording tax pursuant to section 1146(a)

of the Code because they be refinanced or sold under the Plan and after the Confirmation Date.

### A.   Treatment of Unclassified Claims Under the Plan

1.   <u>Allowed Administrative Claims other than Claims of Professionals</u>: The Debtor

does not anticipate any Allowed Administrative Claims other than those of the Debtor's

Professionals at Confirmation. However, to the extent that any such Claims should exist, they

shall be paid in the ordinary course and according to the terms and conditions of the respective

contracts underlying such Claims.

2.   <u>Allowed Administrative Claims of Professionals</u>: Allowed Administrative Claims

of Professionals shall be paid, in full, in Cash, upon the later of (i) allowance by the Court pursuant

to Section 330 of the Bankruptcy Code or (ii) the Effective Date, unless otherwise agreed to by

such professionals. The only Allowed Administrative Claims are those of (i) Debtor's current

counsel, Davidoff Hutcher & Citron LLP in the approximate net unpaid estimated amount, as of

the Confirmation Date, of $75,000; and (ii) a broker to be retained pursuant to order of the

Bankruptcy Court in the approximate amounts of (a) a commission equal to four and one half

percent (4.5%) of the gross purchase price of the Property, which will be paid directly to the broker

at closing without further order of the Court, by the successful purchaser, or (b) a fee in an amount

equal to two percent (2%) of the aggregate amount of gross refinancing or restructured

indebtedness, recapitalization,  and/or joint venture investment received or obtained, or to be

received or obtained by Debtor, or (c) a fee of 1.75% of the Credit Bid, should Bankwell choose

to exercise its rights under section 363(k) of the Bankruptcy Code.

3.     <u>United States Trustee's Fees</u>: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930 and 31 U.S.C. §3717 prior to Confirmation shall be payable by the Effective Date. Thereafter, such fees shall be paid in full, in Cash, in such amount as incurred under the Amended Plan and/or in the ordinary course of business by the Debtor. The Debtor shall effectuate payment of United States Trustee quarterly fees through the entry of a final decree closing the Chapter 11 Case.

**B.     Treatment of Classes**

<u>Class 1 – The Allowed Real Estate Tax Secured Claims</u> The Allowed Class 1 Real Estate Secured Tax Claims in the approximate amount of $100,000, together with any unpaid statutory interest accrued thereon through the  Sale/Auction Closing Date, shall be paid in full, in Cash, from the Distribution Fund upon the Sale/Auction Closing Date. Class 1 is unimpaired and deemed to accept the Plan.

<u>Class 2 – The Bankwell Disputed Secured Claim</u> The Bankwell Class 2 Secured Claim in the filed, Disputed amount of $14,949,858.61, together with accrued interest on the unpaid principal amount at a rate to be determined by the Bankruptcy Court thereon from the Petition Date, shall be paid up to 100% of its Allowed Claim based on the results of the Sale/Auction, in Cash, from the Distribution Fund upon the earlier of a post-Effective Date refinance of the Property or the Sale/Auction Closing Date. Class 2 is impaired and entitled to vote on the Plan..

<u>Class 3 – The Mechanic's Lien Secured Claims.</u> The holders of Mechanic's Lien Class 3 Disputed Secured Claims in the approximate amount of $2,000,000, together with any unpaid statutory interest, costs and reasonable attorneys' fees accrued thereon through the Sale/Auction Closing Date, shall each be paid up to 100% of its Allowed Claim based on the results of the Sale/Auction, in Cash, from the Distribution Fund upon the earlier of a post-Effective Date refinance

of the Property or the Sale/Auction Closing Date. Class 3 is impaired and entitled to vote on the Plan.

    <u>Class 4 – The Allowed General Unsecured Claims.</u> The holders of Allowed Class 4 General Unsecured Claims in the approximate aggregate amount of $3,000,000, shall each be paid up to 100% of its Allowed Claim based on the results of the Sale/Auction, in Cash, from the Distribution Fund upon the earlier of a post-Effective Date refinance or the Sale/Auction Closing Date. Class 4 is impaired and entitled to vote on the Plan.

    <u>Class 5- Interests.</u> The holders of Class 5 interests shall continue to retain their interests in the Debtor after the Effective Date and shall receive any net proceeds after payment in full to all Allowed classified and unclassified Claims. Class 5 interests are unimpaired under the Plan and are deemed to accept the Plan.

**C.**    Means For Implementation

    (1)    Subject to the time deadlines set forth in this Article IV, the Debtor shall continue through a licensed real estate broker, to market the Property in order to refinance or sell and liquidate the Property for the highest and best price on or before February 29, 2024. Upon Closing, the proceeds of refinance or sale shall be distributed to holders of Claims and Interests in the same manner as provided for in Article III herein.

    (2)    In the event that the Debtor has not previously refinanced the Property or sold by a private sale, Debtor shall conduct a public auction of the Property on or before February 29, 2024.

    (3)    The sale of the Property, whether pursuant to a Sale Contract or public auction, shall be free and clear of any and all Claims, liens, encumbrances, equities and Interests of any

nature or kind (collectively, "Liens") and shall constitute a sale under sections 105, 363(b), 363(f), 1123(b)(4) and 1129 of the Code. Nothing set forth herein shall prevent a sale subject to certain liens, provided that the purchaser and the holder of the lien provide their respective consent in writing.

(4)    At an auction conducted pursuant to subsection 4.2 of the Plan or otherwise, Bankwell shall be entitled to and have the absolute right to Credit Bid, in an amount to be determined by the Bankruptcy Court, as to the Property.

The Property. In the event that the Debtor has not previously refinanced the Property or sold by a private sale, Debtor shall conduct a public auction of the Property on or before February 29, 2024.

The sale of the Property, whether pursuant to a Sale Contract or public auction, shall be free and clear of any and all Claims, liens, encumbrances, equities and Interests of any nature or kind (collectively, "Liens") and shall constitute a sale under sections 105, 363(b), 363(f), 1123(b)(4) and 1129 of the Code. Nothing set forth herein shall prevent a sale subject to certain liens, provided that the purchaser and the holder of the lien provide their respective consent in writing and the Class 2 Secured Claim is paid in full.

At an auction:

(i)    If Bankwell is the highest bidder, no deposit shall be required and its Credit Bid Amount shall be applied to the payment of the purchase price *except that* Bankwell shall also be responsible to pay, at Closing, 1.75% of the Credit Bid Amount to the Debtor's real estate broker, and shall also assume the obligation to pay the Class 1 Real Estate Tax Secured Claims.

(ii)    If Bankwell is not the highest bidder, immediately following the auction, the Third-

Party Highest Bidder shall execute the Sale Contract which shall provide, among other things, that: (i) a Closing of the sale will occur on or, at the option of the successful bidder, before the 30th day after the date of the auction; (ii) that time is of the essence with respect to the Closing date, and (iii) the purchaser shall pay in addition to the auction sale price, the buyer's or bidder's premium/commission.

(iii)    If the Third-Party Highest Bidder defaults under the Sale Contract, the Disbursing Agent will be entitled to keep the deposit for distribution under the Plan, and the Debtor shall reserve the second highest bidder. If Bankwell does not purchase the Property at the auction and the Third-Party Highest Bidder is unable to close on the Closing date, the Disbursing Agent shall contact the second highest bidder and enter into a Sale Contract of the amount of such bid; provided however, that the Sale Contract with the second highest bidder shall comply with the provisions of the Plan, which sale must Close within twenty-five (25) days after execution of such contract.

### D.    Resolution Of Disputed Claims & Reserves

(a)    <u>Objections</u>. An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest no later than the Confirmation Date.

(b)    <u>Amendment of Claims</u>. A Claim may be amended after the Effective Date only as agreed upon by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules.

(c)    <u>Reserve for Disputed Claims</u>. The Debtor shall reserve, on account of each holder of a Disputed Claim, that property which would otherwise be distributable to the holder on such date were the Disputed Claim at issue an Allowed Claim at the time of distribution, or such other

property as the holder of the Disputed Claim at issue and the Debtor may agree upon. The property

so reserved for the holder, to the extent that the Disputed Claim is Allowed, and only after the

Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such

holder as provided below.

(d)    <u>Distributions to Holders of Subsequently Allowed Claims</u>. Unless another date is

agreed on by the Debtor and the holder of a particular subsequently Allowed Claim, the Debtor

shall, within ten (10) days after an Order resolving the Disputed Claim becomes a Final Order,

distribute to such holder with respect to such subsequently Allowed Claim that amount, in cash,

from the cash held in reserve for such holder and, to the extent such reserve is insufficient, from

any other source of cash otherwise available to the Debtor, equal to that amount of cash which

would have been distributed to such holder from the Effective Date through such distribution date

had such holder's subsequently Allowed Claim been an Allowed Claim on the Effective Date. The

holder of a subsequently Allowed Claim shall not be entitled to any additional interest on the

Allowed Amount of its Claim, regardless of when distribution thereon is made to or received by

such holder.

(e)    <u>Disputes Regarding Rights to Payments or Distribution</u>. In the event of any

dispute between and among holders of Claims and/ or Interests (including the individual or entity

or entities asserting the right to receive the disputed payment or distribution) as to the right of any

entity to receive or retain any payment or distribution to be made to such entity under the Plan,

the Debtor may, in lieu of making such payment or distribution to such entity, remit the disputed

portion of the Claim into an escrow account or to a distribution reserve as ordered by a court of

competent jurisdiction or as the interested parties to such dispute may otherwise agree among

11

themselves. Notwithstanding anything to the contrary, the Debtor shall make timely distributions on account of the undisputed portion of a Claim or Interest to such claimants.

(f)    <u>Claims Procedures Not Exclusive</u>. All of the aforementioned Claims procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims which were previously disputed may subsequently be compromised, settled, withdrawn, or otherwise resolved without further order of the Bankruptcy Court.

**E.    Amendment, Modification, Withdrawal or Revocation of the Plan.**

The Debtor reserves the right, in accordance with the Section 1127 of the Bankruptcy Code, to amend or modify the Plan with such Order of the Bankruptcy Court, as may be required.

The Debtor may withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**F.    Unclaimed Property**

Except as otherwise provided herein, in the event any claimant fails to claim any distribution within 120 days from the date of such distribution, such claimant shall forfeit all rights thereto and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim. Distributions to claimants entitled thereto shall be sent to their last known address set forth on the most recent proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be later designated by a creditor in writing. The Disbursing Agent and the

Debtor shall use their collective best efforts to obtain current addresses for all claimants. The Disbursing Agent shall notify the Debtor of all returned distributions. All unclaimed Cash shall be redistributed by the Disbursing Agent pro rata to equity.

## G.   Plan Injunction

*Effective on the Confirmation Date, all persons who have held, hold or may hold Claims or Interests are enjoined from taking any of the following actions against or affecting the Debtor or assets of the Debtor with respect to such Claims, Interests or Administrative Claims, except as otherwise set forth in the Plan, and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:*

*(i) Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, arbitration, or other proceeding of any kind against the Debtor or the assets of the Debtor regarding the Claims or Interests;*

*(ii) Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the assets of the Debtor;*

*(iii) Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the assets of the Debtor;*

*(iv) Asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against the Debtor, the assets of the Debtor; and*

*(v) Proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan.*

*H.*   **Exculpation.** *Neither the Debtor nor any of their members, officers, directors,*

*employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties")*
*shall have or incur any liability to any entity for any action taken or omitted to be taken in*
*connection with or related to the formulation, preparation, dissemination, Confirmation or*
*consummation of the Plan, the Disclosure Statement or any contract, instrument, release or*
*other agreement or document created or entered into, or any other action taken or omitted to be*
*taken in connection with the chapter 11 case or the Plan except with respect to their obligations*
*under the Plan and any related agreement or for bad faith, willful misconduct, gross negligence,*
*breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential*
*information that causes damages, and/or ultra vires acts. Notwithstanding any other provision*
*hereof, nothing in Sections 7.2 or 7.3 of the Plan shall (a) effect a release of any claim by the*
*United States Government or any of its agencies or any state and local authority whatsoever,*
*including, without limitation, any claim arising under the Internal Revenue Code, the*
*environmental laws or any criminal laws of the United States or any state and local authority*
*against the Released Parties, nor shall anything in Sections 7.2 or 7.3 of the Plan enjoin the*
*United States or any state or local authority from bringing any claim, suit, action or other*
*proceedings against any of the Released Parties referred to herein for any liability whatever,*
*including, without limitation, any claim, suit or action arising under the Internal Revenue Code,*
*the environmental laws or any criminal laws of the United States or any state and local*
*authority, nor shall anything in Section 7.2 of the Plan exculpate any party from any liability to*
*the United States Government or any of its agencies or any state and local authority whatsoever,*
*including liabilities arising under the Internal Revenue Code, the environmental laws or any*
*criminal laws of the United States or any state and local authority against the Parties referred*

14

*to herein, (b) effect a release of any claim of Bankwell arising out of or under any guarantees executed in connection with the Bankwell Secured Claim or any environmental law, or (c) limit the liability of the Debtor's professionals to the Debtor pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.*

## I.    Retention of Jurisdiction

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a)  To determine all controversies relating to or concerning the allowance of and/ or distribution on account of such Claims or Interests upon objection thereto which may be filed by any party in interest;

(b)  To determine requests for payment of Claims entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

(c)  To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C Sections 157 and 1334;

(d)  To determine all disputed, contingent or unliquidated Claims and all disputed Interests;

(e)  To determine requests to modify the Plan pursuant to Section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

(f)  To make such orders as are necessary or appropriate to carry out the provisions of the Plan;

15

(g)  To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan;

(h)  To determine any and all pending motions and applications for assumption or rejection of executory contracts and leases and the allowance and classification of any Claims resulting from the rejection of executory contracts and leases;

(i)    To resolve any disputes which may arise concerning the sale or auction of the Property or satisfaction of the Allowed Secured Claims as required under the Plan;

(j)    To determine such other matters as may be provided for in the order of the Bankruptcy Court confirming the Plan or as may be authorized under the provisions of the Bankruptcy Code;

(k)    If necessary, to implement any post-Effective Date sale of the Property, including any issues and dispute arising therefrom; and

(l)  To enter a final decree closing the Chapter 11 Case.

**J.    Post-Confirmation Fees, Final Decree**

The reasonable compensation and out-of-pocket expenses incurred post-Confirmation professional fees shall be paid by the Debtor within ten (10) days upon presentation of invoices for such post-petition professional services. All disputes concerning post-confirmation fees and expenses shall be subject to Bankruptcy Court jurisdiction.

A final decree shall be entered as soon as practicable after distributions have commenced under the Plan.

**K.    Continuation of Bankruptcy Stays**

All stays provided for in the Chapter 11 Case under Section 362 of the Bankruptcy Code,

or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**L.      Avoidance and Recovery Actions**

The Debtor believes, after a thorough investigation and review with their counsel, that there are no causes of action under Sections 544, 547, 548, 550 and 553 of the Bankruptcy Code. As such, the Debtor does not intend to pursue any such causes of action.

## III.      FINANCIAL INFORMATION

**A. The Debtor's Schedules of Assets and Liabilities**. Schedule of the Debtor's assets and liabilities have been filed with the Clerk of the Court and may be inspected by all interested parties.

**B. Chapter 7 Liquidation Analysis.** Because the Plan contemplates a refinance or liquidation of the Property, no interest would be served by administering the estates under Chapter 7, which would simply add another layer of administrative expenses, thereby eroding any potential recovery to creditors. Accordingly, the Plan provides a better result to creditors than a liquidation under Chapter 7; nor could a Chapter 7 possibly result in a greater distribution that that proposed under the Plan.

## IV.  CONFIRMATION PROCEDURE

**A.      Voting.** As set forth hereinabove and in the Plan, all Classes are unimpaired and conclusively presumed to accept the Plan. Therefore, their votes will not be solicited.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

**B.      Confirmation Hearing.** The Bankruptcy Code requires the Bankruptcy Court to hold a hearing on Confirmation of the Plan. The Confirmation hearing has been scheduled for the

date set forth on the Court Order which accompanies this Disclosure Statement. The Confirmation

hearing may be adjourned from time to time by the Bankruptcy Court without further notice except

for an announcement of the adjournment made at the Confirmation hearing. At the Confirmation

hearing, the Bankruptcy Court will (i) hear and determine any objections to the Plan and to

Confirmation of the Plan; (ii) determine whether the Plan meets the requirements of the

Bankruptcy Code and has been proposed in good faith; and (iii) confirm or refuse to confirm the

Plan.

### C.      Statutory Requirements for Confirmation of the Plan

At the confirmation hearing, the Debtor will request that the Bankruptcy Court determine

that the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. If so, the

Bankruptcy Court shall enter an order confirming the Plan. The applicable requirements of Section

1129 of the Bankruptcy Code are as follows:

(a)      The Plan must comply with the applicable provisions of the Bankruptcy Code;

(b)      The Debtor must have complied with the applicable provisions of the Bankruptcy

Code;

(c)      The Plan has been proposed in good faith and not by any means forbidden by law;

(d)      Any payment made or promised to be made by the Debtor under the Plan for

services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection

with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court,

and any such payment made before Confirmation of the Plan is reasonable, or if such payment is

to be fixed after Confirmation of the Plan, such payment is subject to the approval of the

Bankruptcy Court as reasonable;

(e)     The Debtor has disclosed the identity and affiliation of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtor under the Plan. Moreover, the appointment to, or continuance in, such office of such individual, is consistent with the interests of holders of Claims and Interests and with public policy. Until completion of all payments to creditors as required under the Plan, there shall be no post-Confirmation compensation by the Debtor to the Debtor's existing management.

(f)     <u>Feasibility and "Best Interest" Tests</u>: The Bankruptcy Code requires that in order to confirm the Plan, the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor (the "Feasibility Test").

For a plan to meet the Feasibility Test, the Bankruptcy Court must find that the Debtor will possess the resources to meet its obligations under the Plan. Since the Plan contemplates a refinance and/or liquidation of the Debtor's assets, Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan. Until such time as the Plan is fully funded, the Debtor shall have ample reserves to ensure that there is sufficient cash on hand to satisfy the basic and critical expenses of the Debtor.

In addition, the Bankruptcy Court must determine that the values of the distributions to be made under the Plan to each Class will equal or exceed the values which would be allocated to such Class in a liquidation under Chapter 7 of the Bankruptcy Code (the "Best Interests Test"). The Best Interests Test with respect to each impaired Class requires that each holder of a Claim or

19

Interest in such Class either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the BankruptcyCode. Because all creditors are unimpaired, no scenario exists, including but not limited to Chapter 7 liquidation, under which the creditors would be entitled to receive a distribution greater than that which the Debtor has proposed in the Plan.

In order to ensure feasibility of the Plan, the Debtor's principals have committed to maintaining, upkeeping, preserving and insuring the Property pending the Plan effectuation and sale process described therein.

The Plan therefore satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest" and feasibility requirements. The Plan is "fair and equitable" and "does not discriminate unfairly". The Plan complies with all other requirements of Chapter 11 of the Bankruptcy Code and the Plan has been proposed in good faith.

D.     **Risk Factors; Alternatives to Plan**

Creditors should understand that there is a risk the Plan could not be confirmed by the Bankruptcy Court. In the event the Plan is not confirmed, the alternatives would include:

(i) Conversion to Chapter 7 Liquidation. Conversion would result is a forced liquidation of the Debtor's business and assets. In accordance with the liquidation analysis herein, the Debtor's Unsecured Creditors would receive a substantially lesser distribution that what is being provided under the Plan.

(ii) Alternative Plan. An alternative plan proposed by a party other than the Debtor would not contain any better of a distribution to unsecured creditors or as swift and equitable of

20

the resolution of Bankwell's Claim.

       **E.**       **Objections to Confirmation.** Objections to confirmation must be in writing and

specify in detail the name and address of the objector, all grounds for the objection and the amount

of the Claim held by the objector. Any such objection must be filed with the Bankruptcy Court

and served upon the following, with a copy to the Court's chambers, so that it is received

by them on or before 4:00 P.M. on the date set forth in the Court Order which accompanies this

Disclosure Statement:

Davidoff Hutcher & Citron LLP
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 381-7400
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

       Objections to confirmation of the Plan are governed by Federal Rule of Bankruptcy

Procedure 9014.

## V.   ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN.

       If the Plan is not confirmed and consummated, the alternatives include: (i) preparation and

presentation of an alternative plan of reorganization; (ii) liquidation of the Debtor under Chapter

7 of the Bankruptcy Code; or (iii) dismissal of the Chapter 11 Case, which would result in all

creditor claims and rights of collection and enforcement being restored in full.

## VI.  POST-CONFIRMATION REPORTS

       The Debtor shall be responsible for filing post-Confirmation reports with the Bankruptcy

Court and shall pay all quarterly fees required under 28 U.S.C. § 1930 and 31 U.S.C. §3717, on

behalf of the Debtor, until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b)

entry of a final decree closing the Chapter 11 Case.

## VII.    TAX CONSEQUENCES

A.        **Tax Consequences of Confirmation.** Confirmation may have federal income tax

consequences for the Debtor and holders of Claims and Interests. The Debtor has not obtained and

does not intend to request a ruling from the Internal Revenue Service (the "IRS"), nor has the Debtor

obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters

raised by Confirmation of the Plan are governed by the Internal Revenue Code and the regulations

promulgated thereunder. The Debtor, creditors and holders of Interests are urged to consult their

own counsel and tax advisors as to the consequences to them, under federal and applicable state,

local and foreign tax laws, of the Plan. The following is intended to be a summary only and not a

substitute for careful tax planning with a tax professional. The federal, state, and local tax

consequences of the Plan may be complex in some circumstances and, in some cases, uncertain.

Accordingly, each holder of a Claim or Interest is strongly urged to consult with his or her own tax

advisor regarding the federal, state, and local tax consequences of the Plan, including but not limited

to the receipt of cash under the Plan.

B.        **Tax Consequences to the Debtor.** The Debtor may not recognize income as a result

of the discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue Code

provides that taxpayers in bankruptcy proceedings do not recognize income from discharge of

indebtedness. However, a taxpayer is required to reduce its "tax attributes" by the amount of the

debt discharged. Tax attributes are reduced in the following order: (i) net operating losses;

22

(ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive

activity loss and credit carryovers; and (vi) foreign tax credit carryovers.

## VIII.    NOTICES

All notices and correspondence should be forwarded in writing to:

> DAVIDOFF HUTCHER & CITRON LLP
> 120 Bloomingdale Road, Suite 100
> White Plains, New York 10605
> Attn: Robert L. Rattet, Esq.
> Jonathan S. Pasternak, Esq.

## IX.    RECOMMENDATION

The Debtor believes that Confirmation of the Plan is preferable to any of the alternatives

described above. The Plan will provide greater recoveries than those available in liquidation to all

holders of Claims. Any other alternative would cause significant delay and uncertainty, as well as

substantial additional administrative costs.

Dated: Bedford Hills, New York
October 30, 2023

> WILLIAMSBURG BOUTIQUE LLC
>
> By:*/s/ Juda Klein*
>    Juda Klein, Managing Member
>
> DAVIDOFF HUTCHER & CITRON LLP
> *Attorneys for the Debtor*
> 605 Third Avenue
> New York, New York 10158
> (212) 557-7200
>
> By: */s/ Jonathan S. Pasternak*
>    Jonathan S. Pasternak