**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re:

WILLIAMSBURG BOUTIQUE LLC

        Debtor.
-----------------------------------------------------------------x

Chapter 11

Case No. 23-22587 (KYP)

# MEMORANDUM DECISION RESOLVING OUTSTANDING ISSUES
# ON THE SALE OF THE DEBTOR'S REAL PROPERTY TO BANKWELL BANK

**APPEARANCES:**

ROBINSON & COLE LLP
*Attorneys for Bankwell Bank and Bankwell Properties Inc.*
666 Third Avenue
New York, NY 10174
  By:    Patrick M. Birney, Esq.
           Brian J. Wheelin, Esq.
           Brian R. Smith, Esq.
                Of Counsel

HERRICK, FEINSTEIN LLP
*Attorneys for Keap Street Holdings LLC*
Two Park Avenue
New York, NY 10016
  By:    Steven B. Smith, Esq.
           Hunter Waters, Esq.
                Of Counsel

DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtor*
605 Third Avenue
New York, NY 10158
  By:    Jonathan S. Pasternak, Esq.
                 Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

**INTRODUCTION**

Williamsburg Boutique LLC ("WB" or the "Debtor") is the owner of an unfinished condominium development in Brooklyn, New York (the "Property"). In 2017, WB was granted an easement (the "Easement") to use a nearby parcel of land owned by Keap Street Holdings LLC ("Keap Street") for parking. Subsequent to the bankruptcy filing, WB sought to sell the Property, and the winning bidder was its pre-petition lender Bankwell Bank ("Bankwell"). As described herein, various disputes arose among the parties that have stalled the entry of the order approving the sale. For the reasons stated, the Court finds that the Debtor's rights under the Easement are included in the sale of the Property to Bankwell. Further, such rights constitute property of the estate within the meaning of section 541(a) of the Bankruptcy Code,[1] which may be sold pursuant to section 363(b). Last, such rights may be sold free and clear of the Keap Street Claim (defined below) pursuant to section 363(f)(4) and (5).

**JURISDICTION**

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York. This is a core proceeding under 28 U.S.C. § 157(b)(2)(N).

---

[1] Unless otherwise indicated, "section" references are to sections of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.

## BACKGROUND

A.  **The Property and the Easement**

WB was formed in 2014 to acquire title to real property located at 80 Ainslie Street, Brooklyn, New York, *i.e.*, the Property.  (*Declaration of Juda Klein Pursuant to Local Bankruptcy Rule 1007-2*, dated August 9, 2023 ("Klein Declaration"), ¶ 2 (ECF Doc. # 8).)[2]  WB acquired the Property for $6 million, and the acquisition was funded in part by financing from Bankwell.  (*Id.* ¶ 3.)  Bankwell also served as a lender for WB's construction and development of the Property.  (*Id.*)  The Property is zoned for mixed residential and commercial use, and WB commenced construction on a five-story building intended for sixteen residential units with commercial space on the ground level.  (*Id.* ¶¶ 4-5.)

Keap Street is the owner of a certain parcel of land ("Land Parcel") designated as Block 2372, Lot 1 in the tax map of Kings County, which is in close proximity to the Property.  (*Declaration and Grant of Easement*, dated September 1, 2017 ("Easement Declaration") at 1; *see also id.*, Schedule A (containing the legal description of the Land Parcel).)[3]  On September 1, 2017, Keap Street, as grantor, and WB, as grantee, entered into the Easement Declaration.  The stated purpose of the Easement Declaration was to grant WB:

> an exclusive and irrevocable easement for parking, use, access, ingress and egress, of, in and over a portion of the Land Parcel to allow a designated portion of the Land Parcel to be used (i) for no less than eight (8) parking

---

[2]     "ECF Doc. # _" refers to documents filed on the electronic docket of this bankruptcy case. References to documents filed on the dockets of other cases will include the case number of such case.

[3]     A copy of the Easement Declaration is attached as Exhibit C to the *Declaration of Patrick M. Birney in Support of Letter Brief Regarding Appurtenant Easement*, dated Sept. 26, 2024 ("Birney Declaration") (ECF Doc. # 117-1).

> spaces (the "Parking Spaces") for the benefit of [the Property] and (ii) to provide access to the Parking Spaces to benefit [the Property].[4]

(*Id.* at 1; *see also id.* §§ 1-2 (granting WB the Easement consistent with the stated purpose).) The Easement Declaration further stated that, absent an amendment or modification signed by the owner of the Property, the Easement runs with the land and inures to the benefit of various related parties including successors and assigns of WB:

> The grants and burdens set forth herein are irrevocable and, except by a writing amending or modifying this easement executed by the owner of the [Property], shall run with the land and shall be binding upon and inure to the benefit of the owner(s) of the [Property] and their legal representatives, successors and assigns, tenants, invitees, licensees, agents, contractors, and employees.

(*Id.* § 4.) Last, the Easement Declaration expressly acknowledged that sufficient consideration had been provided in exchange for the granting of the Easement. (*Id.* at 1 (stating that the Easement was being granted for "good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged").)

## B. The Bankruptcy Case and the Sale of the Property to Bankwell

WB filed a petition for relief under chapter 11 of the Bankruptcy Code on August 7, 2023. No trustee has been appointed, and the Debtor continues to manage its operations and affairs as debtor-in-possession pursuant to sections 1107 and 1108.[5] At the time of the petition, the Debtor had not completed the contemplated construction and development of the Property.[6] On December 13, 2023, the Debtor moved to

---

[4] A diagram showing the portion of the Land Parcel designated for WB parking is annexed to the Easement Declaration as Schedule C.

[5] Bankwell moved for the appointment of a chapter 11 trustee on July 10, 2024 (ECF Doc. # 95), but the motion has been adjourned pending the sale of the Property to Bankwell.

[6] The Debtor commenced an adversary proceeding against Bankwell alleging that Bankwell improperly ceased funding the development of the Property. (*Adversary Complaint and Objection to*

4

approve bid procedures for the sale of the Property pursuant to section 363.[7] The Sale Motion stated that the Debtor seeks "to sell the Property to the highest and best bidder(s), free and clear of all liens, claims and encumbrances, but subject to the right of Bankwell to credit bid pursuant to Section 363(k) . . . ." (Sale Motion ¶ 19.) The Sale Motion also provided that the sale would be "subject to any provisions contained in a Qualified Bid." (*Id.* ¶ 45.)

The Court approved the bid procedures (as amended, the "Bid Procedures") by order dated February 22, 2024, which was amended on May 8, 2024, and again on May 16, 2024, to extend the bid deadline and auction date (as amended, the "Order Approving Bid Procedures").[8] The Order Approving Bid Procedures deemed Bankwell to be a "qualified bidder" under the Bid Procedures and authorized Bankwell to credit bid its entire secured claim pursuant to section 363(k). (Order Approving Bid Procedures at 2; *see also* Bid Procedures § D.) The Bid Procedures stated that the Property was being sold "free and clear of liens, claims, encumbrances and interests . . . ." (Bid Procedures § B(i).)

---

*Claim No. 10-1*, dated Feb. 27, 2024 (ECF Adv. P. No. 24-07005 Doc. # 1).) Bankwell has moved to dismiss the complaint. (*Defendants' Motion to Dismiss the Plaintiff's Complaint and Objection to Claim No. 10-1 and Incorporated Memorandum of Law in Support Thereof*, dated Apr. 8, 2024 (ECF Adv. P. No. 24-07005 Doc. # 7).) Oral argument is scheduled on Bankwell's motion to dismiss for October 10, 2024.

[7] *See Debtor's Motion for Entry of Order (I) Approving Bid Procedures in Connection with the Proposed Sale of Assets of the Estate and (II) Authorizing Auction Sale*, dated Dec. 13, 2023 ("Sale Motion") (ECF Doc. # 37).

[8] The original Order Approving Bid Procedures is available at ECF Doc. # 59, and the amended orders are available at ECF Doc. ## 79 and 82. The Bid Procedures are annexed to the Order Approving Bid Procedures. The Bid Procedures annexed to the first two iterations of the Order Approving Bid Procedures required a qualified bidder to indicate whether it wished to "assume or reject the following executory contracts: Easement Agreement dated September 1, 2017 with Keep [sic] Street Holdings LLC. Estimated cure amount: $2,000,000." The final iteration of the Bid Procedures annexed to the May 16, 2024 Order Approving Bid Procedures omitted that provision.

On May 29, 2024, Bankwell, through a designated affiliate, submitted a $9,380,000 credit bid for the Property ("Bankwell Bid").[9] The Bankwell Bid specified that its bid was for the Property as well as "all rights, title, and interest" in the Easement. (Bankwell Bid at 1; *see also id.* § (iv)a.) Bankwell also rejected the assertion that the Easement was an executory contract within the meaning of section 365. (*Id.* § (ii).)

The next day, the Debtor filed a *Report of Qualified Bid and Notice of Cancellation of Auction* ("Bid Acceptance Notice") (ECF Doc. # 84). The Bid Acceptance Notice reported that (i) the Bankwell Bid was the only qualified bid submitted, (ii) the Easement was included in the assets to be purchased by Bankwell, (iii) Bankwell would not be assuming any executory contracts, and (iv) the Debtor intended to seek Bankruptcy Court approval of the Bankwell Bid. (Bid Acceptance Notice at 1-2.)

Following a June 3, 2024 hearing, counsel to Bankwell filed a notice of presentment attaching a proposed order approving the sale ("Proposed Sale Order"). (*Notice of Presentment of Order Approving the Sale of Assets of Estate and Granting Related Relief*, dated June 14, 2024 (ECF Doc. # 87).) The Proposed Sale Order specified that the assets being sold included the Property and the Debtor's rights under the Easement. (Proposed Sale Order at 2 n.2.)

On June 27, 2024, Debtor's counsel filed a limited objection to Bankwell's Proposed Sale Order. (*See Letter of Jonathan S. Pasternak*, dated June 27, 2024 ("Debtor Limited Objection") (ECF Doc. # 89).) While the Debtor did not oppose the

---

9    A copy of the Bankwell Bid is attached as Exhibit B to the Birney Declaration.

6

sale, it objected to "the inclusion of [the Easement]" as part of the sale because the Easement was not included in the Bid Procedures.  (Debtor Limited Objection at 1-2.)  Further, the Debtor argued that the Easement was not the type of asset that may be sold free and clear of third-party interests under section 363(f).  (*Id*. at 2.)

Bankwell filed a responsive pleading asserting that the Easement had been identified in pertinent sale-related documents as an asset being sold, the Easement may be sold free and clear of liens, claims, and interests under section 363(f), and the Debtor was improperly pursuing meritless claims on behalf of Keap Street.  (*See Response of Bankwell Bank and Bankwell Properties, Inc. to the Debtor's Limited Objection to Entry of Sale Approval Order*, dated July 19, 2024 (ECF Doc. # 98).)

The Court held a hearing on the Proposed Sale Order on September 12, 2024.[10]  After a colloquy, the Court recognized that another lingering issue preventing the entry of the sale order was a determination of what rights and claims, if any, Keap Street, as the Easement grantor, had against Bankwell.  (Hr'g Tr. at 16:17-19:3.)  The Court permitted Keap Street and Bankwell to submit simultaneous letter briefs on this issue.  (*Id*. at 22:2-25.)

**C.    Letter Briefs on the Keap Street Claim**

Keap Street and Bankwell filed simultaneous letter briefs on September 26, 2024.  (*See Letter of Patrick M. Birney* ("Bankwell Letter Brief") (ECF Doc. # 117), and *Letter of Steven B. Smith* ("Keap Street Letter Brief") (ECF Doc. # 119).)  Keap Street argued that Bankwell could not simultaneously enjoy the benefits of the Easement and avoid

---

[10]    A transcript of the September 12, 2024 hearing as available at ECF Doc. # 115 ("Hr'g Tr.").  Prior to this hearing, the Debtor and Bankwell agreed to try mediation, but the mediation did not resolve the issues between the parties.  (*See Mediator's Final Report*, dated Sept. 6, 2024 (ECF Adv. P. No. 24-07005 Doc. # 23).)

7

the burdens and obligations that too run with the land. (Keap Street Letter Brief at 2.) Specifically, Keap Street asserted that it is entitled to a payment of $2.6 million (the "Keap Street Claim") and is expecting future consideration for, among other things, the ongoing maintenance and upkeep of the parking spaces. (*Id.*; *see also id.* at 3.) According to Keap Street, section 363(f) cannot extinguish those obligations. (*Id.* at 2.) Last, Keap Street suggested that the Court need not decide these issues in the context of the sale, and they should be adjudicated between Bankwell and Keap Street in a subsequent proceeding, if necessary. (*Id.* at 4.)

Bankwell took the opposite view and argued that Keap Street is not owed any additional consideration for the Easement because the Easement Declaration plainly acknowledged that consideration had already been paid for the granting of the Easement. (Bankwell Letter Brief at 5-6.) Bankwell also asserted that the Debtor's rights under the Easement constituted property of the estate under section 541(a), which can be transferred to Bankwell under the sale. (*Id.* at 6-9.) Bankwell further contended that Keap Street has no claim against the Debtor's estate because the Debtor provided consideration in exchange for the Easement at the time of the grant, and, even if Keap Street did have a claim, it never filed a proof of claim in this case. (*Id.* at 9-10.) Finally, Bankwell argued that the sale of the Property is free and clear of any possible claim Keap Street could assert by operation of section 363(f). (*Id.* at 10-11.)

## DISCUSSION

### A. The Debtor's Rights Under the Easement May be Sold Under Section 363(b)

Under section 363(b), a debtor-in-possession may sell property of the estate, other than in the ordinary course of business, after notice and a hearing. 11 U.S.C. §

8

363(b)(1). Section 541(a), in turn, provides that "property of the estate" is comprised of all legal or equitable interests of the debtor in property, wherever located or by whomever held, as of the commencement of the case. 11 U.S.C. § 541(a)(1). As this Court has previously observed, "'the legislative history makes it plain that section 541's scope is broad, including all kinds of property,' including tangible and intangible property." *In re Ames Dep't Stores, Inc.*, 287 B.R. 112, 121 (Bankr. S.D.N.Y. 2002) (quoting *Adelphia Commc'ns Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.*, (*In re Adelphia Commc'ns Corp.*), 285 B.R. 580, 590 (Bankr. S.D.N.Y. 2002)); *accord United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983) ("The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad."); *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) ("[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.") (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)), *cert. denied*, 555 U.S. 1213 (2009). "Whether the debtor has a legal or equitable interest in property such that it becomes 'property of the estate' under section 541 is determined by applicable state law." *Musso v. Ostashko,* 468 F.3d 99, 105 (2d Cir. 2006) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)). A debtor's interest in real property constitutes property of the estate. 5 COLLIER ON BANKRUPTCY ¶ 541.04 (16th ed. 2024) ("Real property rights and interests comprise one of the largest classes of property that may become part of the debtor's estate.").

Under New York law, an easement appurtenant is created when it is "(1) conveyed in writing, (2) subscribed by the person creating the easement and (3) burdens the servient estate for the benefit of the dominant estate." *New York Land Dev. Corp. v. Bennet*, 160 A.D.3d 1366, 1367 (N.Y. App. Div. 2018) (quoting *Franklin*

9

*Park Plaza, LLC v. V&J Nat'l Enters., LLC*, 57 A.D.3d 1450, 1451 (N.Y. App. Div. 2008)). "Once created, the easement runs with the land and can only be extinguished by abandonment, conveyance, condemnation, or adverse possession." *Djoganopoulos v. Polkes*, 95 A.D.3d 933, 935 (N.Y. App. Div. 2012) (citing *Strnad v. Brudnicki*, 200 A.D.2d 735, 736 (N.Y. App. Div. 1994)). It is well established that an easement appurtenant "passes to subsequent owners of the dominant estate through appurtenance clauses, even if it is not specifically mentioned in the deed." *Northwood Sch., Inc. v. Fletcher*, 190 A.D.3d 1136, 1138-39 (N.Y. App. Div. 2021) (quoting *Djoganopoulos*, 95 A.D.3d at 935); *see also* RESTATEMENT (FIRST) OF PROPERTY § 542 (1944) (The phrase "runs with the land" means that the easement "will run in whatever manner the succession may occur" including by "involuntary conveyance, as by execution or bankruptcy sale, or by operation of law . . . ."). The term "real property" as defined under New York law is "expansive" and includes "tangible aspects of real property . . . as well as more intangible rights in real property, such as easements." *Hahn v. Hagar*, 153 A.D.3d 105, 109-10 (N.Y. App. Div. 2017); *accord Real Property*, BLACK'S LAW DICTIONARY (12th ed. 2024) (Defined as: "Land and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land. Real Property can be either corporeal (soil and buildings) or incorporeal (easements).").

The parties do not dispute that the Easement remains a valid easement, which benefits the Property, *i.e.*, the dominant estate, and burdens Keap Street's Land Parcel, *i.e.*, the servient estate. Further, the parties do not dispute that the Easement would run with the Property following the sale to Bankwell.

10

The Court now holds that the Debtor's rights under the Easement constitute property of the estate within the meaning of section 541(a). Consistent with the authorities cited above, the Debtor's rights under the Easement constitute an intangible real property interest under New York law. *Hahn*, 153 A.D.3d at 109-10. Thus, such rights fall squarely within the scope of section 541(a), which may be sold under section 363(b). *Accord Colonial Penniman, LLC v. Williams* (*In re Colonial Penniman, LLC*), 575 B.R. 664, 681 (Bankr. E.D. Va. 2017) ("the Easement is property of the Debtor's estate under 11 U.S.C. § 541"), *aff'd in part and remanded in part on other grounds*, 582 B.R. 391 (E.D. Va. 2018); *see also Mills v. Solomon* (*In re Mills*), 239 B.R. 165, 167-68 (Bankr. M.D. Tenn. 1999) (stating that a debtor's option to purchase an easement fell within the "extremely" broad interpretation of section 541).

The Debtor and Keap Street's argument that the Debtor's Easement rights were not included in the sale is without merit. (*See* Debtor Limited Objection at 1-2; Keap Street Letter Brief at 2 n.3.) The Debtor's Sale Motion stated that the sale would be "subject to any provisions contained" in a qualified bid (Sale Motion ¶ 45), the Order Approving Bid Procedures deemed Bankwell to be a qualified bidder (Order Approving Bid Procedures at 2), the Bankwell Bid specified that its bid included "all rights, title, and interest" in the Easement (Bankwell Bid at 1), and the Debtor *accepted* the Bankwell Bid including the rights under the Easement (Bid Acceptance Notice at 2). Thus, the Debtor's rights under the Easement are included in the sale to Bankwell.

That the rights under the Easement would pass to Bankwell is hardly surprising. The Easement benefits the Property rather than its owner (Easement Declaration at 1; *see Mayer v. Smith*, 350 P.3d 1191, 1199 (N.M. Ct. App.) (an easement appurtenant benefits "the land that comprises the dominant estate, rather than individual owners"),

11

*cert. denied*, 348 P.3d 694 (Table) (N.M. 2015); *see also Box L Corp. v. Teton Cty. ex rel. Bd. of Cty. Comm'rs of Teton Cty.*, 92 P.3d 811, 815-16 (Wyo. 2004) ("An appurtenant easement is tied to the dominant estate, is conveyed with a conveyance of that estate, and cannot be conveyed independently thereof.")), and the Easement runs with the land and passes to subsequent owners of the dominant estate (Easement Declaration § 4; *Northwood Sch.*, 190 A.D.3d at 1138-39). Bankwell's inclusion of the rights under the Easement in its bid is therefore consistent with the Easement Declaration and easement law.

**B.     The Sale to Bankwell is Free and Clear of the Keap Street Claim Under Section 363(f)**

Having determined that the Debtor's rights under the Easement are property of the estate, which may be sold under section 363(b), the Court must now address whether the sale is free and clear of Keap Street's interest, including the Keap Street Claim, pursuant to section 363(f). That section provides that estate property may be sold "free and clear of any interest in such property of an entity other than the estate" if one of the succeeding subparagraphs is satisfied. 11 U.S.C. § 363(f). "Although the text of the statute refers only to interests in the property itself, it is now generally agreed – including in this Circuit – that this provision may more broadly extinguish claims that 'arise from the property being sold.'" *Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.)*, 467 B.R. 694, 702-03 (S.D.N.Y. 2012) (quoting *Ind. State Police Pension Tr. v. Chrysler LLC (In re Chrysler LLC)*, 576 F.3d 108, 126 (2d Cir.), *vacated as moot*, 558 U.S. 1087 (2009)); *see also id.* at 703 ("Section 363(f) can be used to sell property free and clear of claims that could otherwise be assertable against the buyer of the assets under the common law doctrine of successor liability.") (citation and

internal quotation marks omitted). Here, Keap Street alleges that it is owed $2.6 million for use of the parking spaces under the Easement, *i.e.*, the Keap Street Claim. (Keap Street Letter Brief at 2.) This claim "arises from" the Easement. Therefore, to the extent one of the subparagraphs in section 363(f) is satisfied, the Easement may be sold free and clear of the Keap Street Claim.

      1.    **Bona Fide Dispute**

Under section 363(f)(4), property may be sold free and clear of a third-party's interest if "such interest is in bona fide dispute." Under that provision, the Court must determine "whether there is an objective basis for either a factual or legal dispute as to the validity of the debt." *In re Collins*, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995) (quoting *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991)); *see also Key Mech. Inc. v. BDC 56 LLC* (*In re BDC 56 LLC*), 330 F.3d 111, 117-18 (2d Cir. 2003) (adopting the same objective standard to interpret the "bona fide dispute" language in section 303(b)), *abrogated in part on other grounds by Adams v. Zarnel* (*In re Zarnel*), 619 F.3d 156 (2d Cir. 2010). The Court's "objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute." *BDC 56 LLC*, 330 F.3d at 118 (quoting *Rimell v. Mark Twain Bank* (*In re Rimell*), 946 F.2d 1363, 1365 (8th Cir. 1991)); *accord In re Scott*, Case No. 10-69733, 2011 WL 13394235, at *3 (Bankr. E.D. Mich. June 29, 2011) ("[D]eciding the merits of the bona fide dispute (in addition to its existence) is something which the Court has concluded it should not and cannot do in the context of a requested § 363(f) sale proceeding.").

Here, the validity of the Keap Street Claim is subject to a bona fide dispute. As set forth in the Bankwell Letter Brief (*see* Bankwell Letter Brief at 9-11), the Easement Declaration plainly stated that the Easement was granted in exchange for "good and

13

valuable consideration, the receipt and sufficiency of which are hereby acknowledged . . . ." (Easement Declaration at 1.) Bankwell pointed out that the Easement Declaration did not contemplate additional consideration. (Bankwell Letter Brief at 5.) Bankwell also cited *M'Crea v. Purmort*, 16 Wend. 460 (N.Y. 1836) and its progeny supporting the general proposition that a grantor, in the absence of fraud, is estopped by the consideration clause in a deed from alleging that the deed was executed without consideration. (Bankwell Letter Brief at 5-6 (citing authorities).) Conversely, Keap Street provided little support for the Keap Street Claim other than to imply that the terms of the Easement Declaration were ambiguous. (Keap Street Letter Brief at 3 n.4.)

Based on the plain language of the Easement Declaration and the materials presented, it appears that Bankwell has the more compelling argument on the merits of the Keap Street Claim. *See, e.g.*, *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 436-37 (N.Y. 2013) ("Contrary to SVCare's contention, the commonplace recital of 'other good and valuable consideration' does not render the option contract ambiguous or incomplete."). As stated, however, section 363(f) does not ask the Court to decide the merits of the claim. Rather, the provision asks the Court to ascertain whether a bona fide dispute exists. Based on the foregoing, the validity of the Keap Street Claim is, at minimum, subject to bona fide dispute. Therefore, section 363(f)(4) is satisfied.

    **2.    Money Satisfaction**

Alternatively, section 363(f)(5) is satisfied. Under that provision, property may be sold free and clear of a third-party's interest if such party "could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest." Here, the Keap Street Claim is a claim *seeking* money damages pursuant to the terms of the

14

Easement Declaration. (Keat Street Letter Brief at 2 ("Keap Street is entitled to a payment of $2.6 million . . . .").) If Keap Street successfully brought this claim in a legal or equitable proceeding, it would be entitled to money damages. Therefore, section 363(f)(5) is satisfied.

### 3. Keap Street's Arguments

Keap Street cites three cases generally supporting the proposition that purchasers of real property under section 363 may not take such property free and clear of restrictive covenants. *See Mancuso v. Meadowbrook Mall Co. Ltd. P'ship* (*In re Rest. Assocs., L.L.C.*), Civil Action No. 1:06CV53, 2007 WL 951849, at *8-10 (N.D. W. Va. March 28, 2007) (ruling that property could not be sold free and clear of certain covenants governing the type of business that may operate on the property under section 363(f)(1) and (4) but remanding for further factual findings on the applicability of section 363(f)(5)); *In re Inwood Heights Hous. Dev. Fund Corp.*, No. 11-13322 (MG), 2011 WL 3793324, at *7 (Bankr. S.D.N.Y. Aug. 25, 2011) (observing that the debtor could not sell property, designated by New York City for low-income housing, free and clear of a deed restriction requiring approval of such sale by a city agency); *In re Fifth St. Hous. Dev. Corp.*, 79 B.R. 568, 571-76 (Bankr. S.D.N.Y. 1987) (ruling that the debtor could not sell property, designated by New York City for low-income housing, free and clear of covenant requiring the property to be used solely for low-income housing). According to Keap Street, if property cannot be sold free and clear of restrictive covenants, it stands to reason that the Property may not be sold free and clear of obligations owed to Keap Street under the Easement. (Keap Street Letter Brief at 2-3.)

Those cases are distinguishable from the present circumstances. First, there is no restrictive covenant or other condition that Bankwell seeks to avoid compliance with

15

under the sale.  Rather, Bankwell seeks the transfer of the same rights that the Debtor currently enjoys under the Easement.  (*See* Easement Declaration at 1 (contemplating that the Easement rights may be passed to "successors and/or assigns"); *see also id.* § 4.)  Second, in the cases cited by Keap Street, the restrictive covenants burdened estate property.  Here, the rights under the Easement are an asset of the estate that may be sold free and clear of the Keap Steet Claim pursuant to section 363(b) and (f).

Keap Street did, however, identify a potential future obligation of Bankwell.  (Keap Street Letter Brief at 3.)  Under New York law, the owner of the dominant estate is responsible for "maintaining and repairing" the easement.  *Raskin v. Crown-Kingston Realty Assocs.*, 254 A.D.2d 472, 473 (N.Y. App. Div. 1998) ("The owners of the dominant estates in the easement are responsible for maintaining and repairing the easement.  A servient owner is under no obligation to construct means for the enjoyment of the easement, and is not under any duty to make any repairs to the easement, absent an agreement to the contrary.") (citations omitted), *leave to appeal denied*, 721 N.E.2d 22 (N.Y. 1999).  As the purchaser of the Property, it would seem that these obligations would soon fall on Bankwell.  This issue is not ripe for determination and need not be resolved in the context of the sale of the Property.

## **CONCLUSION**

For the reasons stated, the Court finds that the Debtor's rights under the Easement are included in the sale of the Property to Bankwell.  The Court holds that such rights constitute property of the estate within the meaning of section 541(a) and may be sold pursuant to section 363(b).  The Court also holds that the sale of the Debtor's rights under the Easement shall be free and clear of the Keap Street Claim pursuant to section 363(f)(4) and (5).  Counsel to Bankwell shall settle an order

16

pursuant to Local Bankruptcy Rule 9074-1 approving the sale of the Property and the Debtor's rights under the Easement consistent with this Memorandum Decision.



**Dated: October 9, 2024
Poughkeepsie, New York**

**/s/ Kyu Y. Paek**
_____
**Hon. Kyu Y. Paek
U.S. Bankruptcy Judge**